170 F.3d 943
 99 Cal. Daily Op. Serv. 1951, 1999 Daily
Journal D.A.R. 2529
Gurcharan SINGH-BHATHAL, aka Gurcharan Singh-Kur, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-70502.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1998.
Decided March 18, 1999.
 
 Timothy M. Greene, Seattle, Washington, for the petitioner.
 Douglas Ginsburg, Office of Immigration Litigation, Department of Justice, Washington, D.C., for the respondent.
 On Petition for Review of an Order of the Board of Immigration Appeals. INS No. Akv-unn-bjx.
 Before: D.W. NELSON, KOZINSKI and Noonan, Circuit Judges.
 
 
 1
 Opinion by Judge KOZINSKI; Dissent in part by Judge KOZINSKI; Dissent by Judge NOONAN.
 
 KOZINSKI, Circuit Judge (except as to Part V):
 
 2
 We review a decision of the Board of Immigration Appeals that an Immigration Judge who gains jurisdiction over a deportation proceeding pursuant to 8 C.F.R. § 103.5(a)(1) (1995) has authority to reconsider an order entered by the IJ who previously had jurisdiction over that proceeding.
 
 
 3
 * On July 24, 1994, Gurcharan Singh-Kaur (Singh), a native and citizen of India, was taken into custody by the Immigration and Naturalization Service for entering the United States without inspection. The following day, Singh was served with an Order to Show Cause alleging he was deportable pursuant to 8 U.S.C. § 1251(a)(1)(B) (1994). Singh posted bail and was released from INS custody on August 1. On August 5, the Office of the Immigration Judge in Phoenix, Arizona, sent a Notice of Hearing by certified mail to Singh's address in Bellevue, Washington, informing him that he was required to appear at a November 30th deportation proceeding. Pursuant to advice he received from a private immigration consultant, Singh did not appear for his deportation hearing. Instead, he filed an application for asylum with the INS Asylum Office in San Francisco, California, under the alias Gurcharan Singh-Bhathal. When Singh did not show up for his November 30th hearing in Phoenix, the IJ ordered him deported in absentia.
 
 
 4
 Some seventeen months later, in April 1996, the INS apprehended Singh in Bellevue. Singh subsequently moved that his case be reopened and venue transferred to Seattle, Washington. On June 5, the IJ in Phoenix granted Singh's motion to reopen and transferred venue to Seattle. In the meantime, the INS discovered that Singh had filed an asylum application under an alias, but determined that the application was invalid because he had been placed in deportation proceedings before he filed the asylum application. At the Seattle hearing, Singh conceded deportability and indicated he intended to apply for asylum. The INS moved for reconsideration of the Phoenix IJ's order reopening Singh's case. The Seattle IJ granted the INS's motion after concluding that she had jurisdiction to reconsider the prior order. The Seattle IJ subsequently found that 8 U.S.C. § 1252b(c)(3)(A) barred Singh from having his case reopened because he had not filed his motion to reopen within 180 days of the final order of deportation and there were no exceptional circumstances to excuse his failure to appear at his deportation hearing.
 
 
 5
 On appeal, the BIA determined that the Seattle IJ had jurisdiction to reconsider the Phoenix IJ's order to reopen pursuant to 8 C.F.R. § 103.5(a)(1)(ii) and affirmed the Seattle IJ's order granting the INS's motion to reconsider. Singh timely petitions for review.
 
 II
 
 6
 We first dispose of Singh's argument that the INS's failure to appeal the Phoenix IJ's interlocutory order reopening his case rendered that order final. Interlocutory appeals are ordinarily not entertained by the BIA. See Matter of Correa, 19 I. & N. Dec. 130, 130, 1984 WL 48595 (BIA 1984). Contrary to Singh's unsupported assertion, the INS was not foreclosed from moving for reconsideration by its failure to appeal the non-appealable order to the BIA.
 
 III
 
 7
 Singh challenges the Seattle IJ's jurisdiction to reconsider the Phoenix IJ's rescission of the in-absentia deportation order entered on November 30, 1994. An IJ "may upon his/her own motion, or upon motion of the trial attorney or the respondent, reopen or reconsider any case in which he/she had made a decision." 8 C.F.R. § 242.22 (1995).[1] Singh appears to suggest that section 242.22 precludes an IJ who has not made a previous decision from ruling on subsequent motions to reopen or reconsider. Section 242.22, however, also provides that "[e]xcept as otherwise provided in this section, a motion to reopen or reconsider shall be subject to the requirements of § 103.5 of this chapter." Pursuant to 8 C.F.R. § 103.5(a)(1)(i), "when the affected party files a motion, the official having jurisdiction may, for proper cause shown, reopen the proceeding or reconsider the prior decision." Section 103.5(a)(1)(ii), in turn, confers jurisdiction on the official "who made the latest decision in the proceeding unless the affected party moves to a new jurisdiction. In that instance, the new official having jurisdiction is the official over such a proceeding in the new geographical locations." (emphasis added). Read together, sections 103.5(a)(i)-(ii) and 242.22 establish that the IJ with jurisdiction has discretion to reopen the proceeding or reconsider the prior decision upon the affected party's motion.
 
 
 8
 The application of these regulations to Singh's case is straightforward: Once the Phoenix IJ granted Singh's request for a change of venue to Seattle, the Seattle IJ assumed jurisdiction over the case. Under subsection 103.5(a)(1)(i), the Seattle IJ had jurisdiction to grant the INS's motion to reconsider the prior order reopening Singh's case. We defer to an agency where its interpretation of its own regulations is neither clearly erroneous nor inconsistent with the regulations. See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); Abboud v. INS, 140 F.3d 843, 848-49 (9th Cir.1998). Here, we defer without hesitation because the regulations clearly granted the Seattle IJ jurisdiction to reconsider the Phoenix IJ's order to reopen.
 
 
 9
 The dissent's argument that section 242.22 limits jurisdiction over reopening or reconsideration to an IJ who has made a previous decision in the case is unsupported by the language or the logic of the INS's regulations. Section 242.22 does not say that an IJ who has made a previous decision is the only IJ who may reopen or reconsider the case. And how could it? Under the dissent's interpretation of section 242.22, a case could never be reopened or reconsidered if the IJ with initial jurisdiction quits, dies or, as here, loses jurisdiction upon granting the alien's motion for transfer of venue. We decline to impose upon the INS such manifestly absurd results, especially where its interpretation of its own regulation is consistent with the regulation's language and purpose.
 
 
 10
 The dissent also unjustifiably crabs section 242.22's plain language. Section 242.22 states broadly that "a motion to reopen or reconsider shall be subject to the requirements of § 103.5 of this chapter." Section 242.22 does not say, as the dissent would have it, that reopening or reconsideration is subject to those subsections of section 103.5 that contain the word "requirements" in their titles. Instead, section 242.22 incorporates section 103.5's provisions for reopening and reconsideration and applies said provisions to IJs. Nothing in section 242.22 intimates that its reference to section 103.5 is meant to be read as narrowly as the dissent suggests, and we will not do so in the absence of clear language to the contrary.
 
 
 11
 8 U.S.C. § 1252b(c)(3)(A) states that if an alien has received written notice of his deportation hearing, yet fails to attend the hearing, a deportation order "may be rescinded only ... upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances."[2] Where statutory language is unambiguous, we give effect to Congress's expressed intent. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). There is no ambiguity to subsection 1252b(c)(3)(A): Provided that the alien has the requisite notice, failure to move for reopening within subsection 1252b(c)(3)(A)'s 180-day period precludes relief from deportation. There are no exceptions to this statutory time bar. Cf. In re A-A-, Interim Dec. 3357, 1998 WL 422064 (BIA July 16, 1998). Singh conceded that he had received written notice of the hearing, so he had 180 days from the date of the in-absentia deportation order to file his motion to reopen. As both the Seattle IJ and the BIA determined, the Phoenix IJ's form order rescinding the prior deportation order was plainly incorrect because Singh's untimely motion to reopen was absolutely barred by subsection 1252b(c)(3)(A). The Seattle IJ thus did not abuse her discretion in granting reconsideration.
 
 IV
 
 12
 As we have found that the BIA correctly determined that the Seattle IJ had jurisdiction to vacate the Phoenix IJ's erroneous order reopening the proceedings, Singh's due process claim necessarily fails. Though Singh argues that the in-absentia order of deportation deprives him of a fair opportunity to present his asylum claims, he overlooks the fact that he was free to do so at the November 30th hearing he skipped without justification. Even if Singh had moved for reopening within 180 days of the deportation order, he could have justified his failure to appear at the deportation hearing only upon showing that exceptional circumstances excused his absence. See 8 U.S.C. § 1252b(c)(3)(A). The statute defines exceptional circumstances as those "beyond the control of the alien," exemplified by "serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances." Id. § 1252b(f)(2). Singh argues that the advice given him by the immigration consultant not to appear at the hearing constitutes an exceptional circumstance. In no sense, however, did the consultant's advice render Singh's ability to appear at the hearing beyond his control. Singh was informed that he was required to attend the November 30th hearing or be subject to immediate deportation, but he chose to heed the consultant's advice and disregard the written notice provided by the INS.
 
 
 13
 Although Singh may have received poor advice, this does not alter the fact that he failed to appear at his hearing, not because of illness, a death in the family, or some similarly severe impediment, but because he took the word of the consultant over that of the INS. Singh "cannot complain of an order entered in absentia, ... if [he] 'voluntarily choose[s] not to attend a deportation hearing which may affect [him] adversely.' " Sharma v. INS, 89 F.3d 545, 548 (9th Cir.1996) (quoting United States v. Dekermenjian, 508 F.2d 812, 814 (9th Cir.1974)).
 
 V
 
 14
 Singh contends that section 1252b does not preclude an untimely reopening where the petitioner seeks asylum. Though a BIA dissenter discussed this very issue in detail, Singh himself raises this claim for the first time on appeal, which constitutes "a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir.1994) (quoting Vargas v. U.S. Dep't of Immigration & Naturalization, 831 F.2d 906, 907-08 (9th Cir.1987)) (internal quotation marks omitted). Similarly, Singh's res judicata and public policy claims were not raised before the BIA in any fashion and, therefore, may not be reviewed by this court.
 
 
 15
 PETITION DENIED.
 
 KOZINSKI, Circuit Judge, dissenting in part:
 
 16
 The majority declines to review Singh's claim that 18 U.S.C. § 1252b does not bar asylum petitioners who seek to have their cases reopened, even though a member of the BIA made this very argument in dissent. Maj. op. at 946-947. In so doing, my colleagues take the requirement of administrative exhaustion beyond all reasonable bounds and foreclose judicial review of issues the agency had an opportunity to consider. The majority relies on Rashtabadi v. INS, 23 F.3d 1562 (9th Cir.1994), a case that is easily distinguishable. In Rashtabadi, neither the petitioner nor anyone else raised certain arguments before the BIA. In holding that we lacked jurisdiction to consider those arguments, we explained our rationale as follows:
 
 
 17
 Rashtabadi's allegations of due process violations are exactly the sorts of procedural errors which require exhaustion. Given the opportunity, the BIA could have corrected any of the alleged procedural errors. Thus, since Rashtabadi did not present his arguments to the BIA, we have no jurisdiction to resolve them.
 
 
 18
 Id. at 1567 (emphasis added) (citations omitted). Here, the BIA could well have "corrected any of the alleged procedural errors" simply by adopting the views expressed by the dissent.
 
 
 19
 Rashtabadi reflects the standard rationale for requiring exhaustion, which is to ensure that agencies are given first opportunity to rule on the issue:
 
 
 20
 The agency should be free, even when it errs, to work out its own problems. The courts should not interfere with the job given to it until it has completed its work.... The agency, as the tribunal of first instance, should be permitted to develop the factual record upon which decisions should be based. Like the trial court, the agency should be given the first chance to exercise discretion and apply its expertness. In addition, exhaustion is an aspect of the allocation of overtaxed judicial resources; judicial efficiency requires the courts to stay their hand while the party may still vindicate his rights in the administrative process. If he is required to pursue further agency remedies, the courts may never have to intervene.
 
 
 21
 Bernard Schwartz, Administrative Law § 8.30 (2d ed.1984) (footnotes omitted). Indeed, Rashtabadi noted that the petitioner there might still obtain administrative relief by "mov[ing] the Board to reopen his appeal." Rashtabadi, 23 F.3d at 1567.
 
 
 22
 None of the reasons for requiring exhaustion applies in a case like ours, where a dissenting member of the BIA discussed in detail the very issue that was supposedly raised for the first time on appeal. Though the BIA majority did not expressly address the dissenter's argument, they certainly were aware of it; I find it hard to believe that the BIA majority ruled against Singh even though they found the dissent's logic persuasive. Nor did the BIA majority say it was refusing to consider the argument because Singh himself had not raised it. In holding that Singh "well exceeded the 180-day statutorily required period for reopening mandated by [8 U.S.C. § 1252b(c)(3)(A) (1994) ]," the majority rejected the dissent's contrary contention. Interpreting Rashtabadi to preclude review in these circumstances perversely forces Singh to make a hopeless petition for the BIA to reopen his case in order to reconsider a claim it has already found unpersuasive.
 
 
 23
 Though Rashtabadi uses the language of jurisdiction, it does not use the term in the sense of subject matter jurisdiction--that we have no power to hear the appeal at all. Rather, it says we have no jurisdiction to hear an argument the BIA did not consider because the BIA could have corrected the problem, had it only been aware of it. Where, as here, the agency was aware of the problem, where it did apply its expertise, where it did exercise its discretion, it is bizarre--and decidedly unfair to petitioner--for us to refuse to review that decision because the argument below was made by the dissenter. Neither the doctrine of exhaustion of remedies nor Rashtabadi calls for such a harsh result.
 
 
 24
 The agency here had a fair opportunity to resolve the question and took its best shot. Relegating people in Singh's position to a hopeless motion to reopen before the BIA strikes me as the kind of wooden proceduralism that serves nobody's interests except those of the lawyers.
 
 NOONAN, Circuit Judge, dissenting:
 
 25
 A single issue was presented to the Board of Immigrations Appeals (the Board): did an immigration judge (IJ) in Seattle have jurisdiction to correct a decision to reopen made by an immigration judge in Phoenix? The single issue before us is resolved by the regulations promulgated by the Immigration and Naturalization Service (the INS) itself. We, of course, defer to the agency's own interpretation of its regulations but do not blindly accept an interpretation contradictory to their text. 8 C.F.R. § 242.22 (1995) provides as follows:
 
 
 26
 § 242.22 Reopening or reconsideration.
 
 
 27
 Except as otherwise provided in this section, a motion to reopen or reconsider shall be subject to the requirements of § 103.5 of this chapter. The immigration judge may upon his/her own motion, or upon motion of the trial attorney or the respondent, reopen or reconsider any case in which he/she had made a decision, unless jurisdiction in the case is vested in the Board of Immigration Appeals under part 3 of this chapter. An order by the immigration judge granting a motion to reopen may be made on Form I-328. A motion to reopen will not be granted unless the immigration judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the hearing; nor will any motion to reopen for the purpose of providing the respondent with an opportunity to make an application under § 242.17 be granted if respondent's rights to make such application were fully explained to him/her by the immigration judge and he/she was afforded an opportunity to do so at the hearing, unless circumstances have arisen thereafter on the basis of which the request is being made. The filing of a motion under this section with an immigration judge shall not serve to stay the execution of an outstanding decision; execution shall proceed unless the immigration judge who has jurisdiction over the motion specifically grants a stay of deportation. The immigration judge may stay deportation pending his/her determination of the motion and also pending the taking and disposition of an appeal from such determination.
 
 
 28
 Without ambiguity jurisdiction is conferred on an immigration judge to "reopen or reconsider any case in which he/she had made a decision." No other judge is given this jurisdiction. No reference to § 103.5 is pertinent to reopening because it is "otherwise provided in this section," viz., that reopening is to be decided by the immigration judge who made the original decision. No appeal to the BIA lies from this interlocutory order. Unless reconsideration is sought from the original immigration judge the reopening stands. Its soundness is not an issue for us.
 
 
 29
 What, then, is the meaning of "the requirements of § 103.5"? The cross-reference is to regulations which read in pertinent part as follows:
 
 
 30
 § 103.5 Reopening or reconsideration.
 
 
 31
 (a) Motions to reopen or reconsider in other than special agricultural worker and legalization cases--(1) When filed by affected party--(i) General. Except where the Board has jurisdiction and as otherwise provided in 8 CFR parts 210, 242, or 245a, when the affected party files a motion, the official having jurisdiction may, for proper cause shown, reopen the proceeding or reconsider the prior decision....
 
 
 32
 (ii) Jurisdiction. The official having jurisdiction is the official who made the latest decision in the proceeding unless the affected party moves to a new jurisdiction. In that instance, the new official having jurisdiction is the official over such a proceeding in the new geographical locations.
 
 
 33
 (iii) Filing Requirements--A motion shall be submitted on Form I-290A, and may be accompanied by a brief. It must be--
 
 
 34
 * * *
 
 
 35
 (iv)(2) Requirements for motion to reopen. A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence. A motion to reopen an application or petition denied due to abandonment must be filed with evidence that the decision was in error because:
 
 
 36
 * * *
 
 
 37
 (3) Requirements for motion to reconsider. A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision.
 
 
 38
 The "requirements" that § 242.22 incorporates by reference to § 103.5 are the "Filing Requirements," 8 C.F.R. § 103.5(a)(iii) (1995); "Requirements for motion to reopen," 8 C.F.R. § 103.5(iv)(2) (1995); and "Requirements for motion to reconsider," 8 C.F.R. § 103.5(iv)(3) (1995). The headings of these subdivisions of § 103.5 correspond exactly with the cross-reference to requirements. The cross-reference does not confer jurisdictional authority. This conclusion, which follows from the text of the regulations, is confirmed by consideration of what Part 103 does deal with.
 
 
 39
 Part 103 is entitled "Powers And Duties Of Service Officers; Availability of Service Records." Part 103 goes on to discuss the duties of the Deputy Commissioner, the General Counsel, the Regional Counsel, the Directors of Congressional Relations, Public Affairs, and Internal Audit, the Executive Associate, Associate, and Assistant Commissioners, the Director of Asset Forfeiture, the Director of Administrative Appeals, the Director of the National Fines Office, the Service Center Directors, the Regional and District Directors, the Officers in charge, the Asylum Officers, the Director of Security, the Director of Equal Employment Opportunity, and the Directors of Administrative Centers among others. 8 C.F.R. § 103.1 (1995). It then lists the varieties of immigration officers such as immigration inspectors, Border Patrol agents, and application adjudicators. 8 C.F.R. § 103.1(j) (1995). This comprehensive list of immigration officers does not include the category of immigration judge.
 
 
 40
 An immigration judge "is an officer of the Justice Department" and "independent of the INS." Rafeedie v. INS, 880 F.2d 506, 507 (D.C.Cir.1989). Immigration judges and their functions are dealt with not by Part 103 but by "Part 3--Executive Office For Immigration Review." Immigration judges are identified by title and function in 8 C.F.R. § 3.10 (1995). Section 3.2, provides explicitly for reopening of cases in which the Board has made a decision. No one would suppose that the reopening provisions of § 103.5 would trump these provisions. Section 3.3 provides for appeals from two decision-makers, "the Service office" and the "Office of the Immigration Judge." Regulations governing Service officers cannot be treated as automatically governing decisions of immigration judges. The offices are carefully distinguished.
 
 
 41
 To recapitulate: The attempt of the INS to invoke § 103.5 to permit reconsideration by the Seattle IJ is contrary to law for two reasons. As § 103.5 explicitly prescribes, it does not apply "where the Board has jurisdiction and as otherwise provided in 8 CFR parts 210, 242 or 245a." As we have seen, it is explicitly provided in § 242.22 that reopening is to be done by the Immigration judge who "had made a decision." Words could not be clearer as to where jurisdiction lies. As we have seen, no one would pretend that § 103.5 gives jurisdiction for reopenings by the Board. Neither does it provide jurisdiction for reopenings by an Immigration judge.
 
 
 42
 The second reason the contention of the INS is wrong is that it treats immigration judges as Service officers by reading "official" in § 103.5(a)(ii) to include immigration judges. That is not only a confusion of functions, but it is a serious derogation from the independence and impartiality with which those invested with the title and responsibility of judges must exercise their judicial office. As immigration judges are not Service officers, their decisions to reopen or not cannot be regulated by provisions directed to decisions of district directors, asylum officers, and other personnel of the Service office. We do not suggest for a moment that Service officers are not expected to apply the law fairly, but they properly take directions from their superiors. The immigration judge is expected to follow binding precedent but in application of the law is expected to act justly as a judge. That expectation necessarily implies an independence of superiors and an impartiality in regard to the litigants very different from that of a Service officer. We cannot amalgamate the judge to the Service officer without eroding the statutory scheme set up by Congress to protect rights precious to those moving through the asylum process that a generous nation has opened to those fleeing persecution.
 
 
 43
 We cannot remake the regulations the INS has made in order to cure a gap caused by a change in venue. In a field where technicality sometimes seems more important than justice, the technical requirements for jurisdiction must be kept. Section 242 has now been repealed so that its meaning is of no great significance for the future. 62 Fed.Reg. 10312, 10327 (1997). But it is significant for the future to insist that jurisdictional requirements be observed and to maintain the sharp distinction between Service officers and those entrusted with the impartial administration of justice.
 
 
 44
 Suppose a federal district court in Sacramento issues an injunction in a labor dispute. Two months later the party that has been enjoined goes to the federal district court in Los Angeles and persuades that court that the injunction was erroneously issued. When the objection is made that the second court has no jurisdiction, the answer is given that a decision of the National Labor Relations Board embraces both Sacramento and Los Angeles, so that the federal district court in Los Angeles has jurisdiction to correct the error of a federal district court in Sacramento. The answer is so improbable as to be outrageous. Something analogous has happened here. Without jurisdiction an immigration judge in one city has corrected the decision of the only immigration judge with authority to make the correction.
 
 
 45
 Singh-Bhathal, if his statements are true, has suffered torture in his country of origin and runs the risk of death by persecutors if he is returned to it. Under INS v. Cardoza-Fonseca, 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), even a 10 percent likelihood of such a fate qualifies an applicant for asylum. With such a standard set by the legislature, we should not cut off the possibility of Singh-Bhathal qualifying unless there is law that mandates that harsh result. When, in fact, the law runs the other way, he must be allowed the opportunity the law allows.
 
 
 
 [1]
 Part 242's regulations are no longer in effect, but governed immigration judges' authority to reconsider cases at the time the Seattle IJ reconsidered the Phoenix IJ's order reopening Singh's case
 
 
 [2]
 8 U.S.C. § 1252b was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 308(b)(6), Pub.L. No. 104-208, 110 Stat. 3009-546, 3009-615, whose new rules do not apply to aliens such as Singh who were in exclusion or deportation proceedings as of April 1, 1997, see id. § 309(c)(1), 110 Stat. at 3009-625