Tigran EKIMIAN; Rouzan Nagapetian; Avetis Hekimian, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 99–70322.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2000.

Submission Withdrawn April 16, 2001.

Resubmitted Sept. 5, 2002.

Filed Sept. 12, 2002.

Victor D. Nieblas, Los Angeles, CA, for the petitioners.

David V. Bernal, Brenda E. Ellison, and Donald A. Couvillon, Washington, DC, for the respondent.

Before: BRIGHT,[*] T.G. NELSON, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge.

Tigran Ekimian, his wife, Rouzan Nagapetian, and their minor son, Avetis Hekimian, (hereinafter the "Ekimians") seek review of an order by the Board of Immigration Appeals ("BIA") dismissing as untimely their motion to reopen deportation proceedings. The Ekimians based their motion to reopen on an application for an adjustment of status as a skilled worker or professional pursuant to Immigration and Naturalization Act ("INA") §§ 203(b)(3)(A)(i), (ii), 8 U.S.C. §§ 1153(b)(3)(A)(i), (ii), relying on Tigran Ekimian's recently approved I–140 petition (Immigrant Petition for Alien Worker). We hold that the Ekimians' motion to re-

open was untimely under 8 C.F.R. § 3.2(c)(2), and that we lack jurisdiction to review a BIA decision not to reopen the proceeding *sua sponte* under 8 C.F.R. § 3.2(a).

## I. Facts and Procedural Background

Ekimian, an Armenian citizen, entered the United States as a nonimmigrant visitor on October 1, 1993, and was authorized to remain in the United States until March 28, 1994. His wife and son, also Armenian citizens, entered the United States as nonimmigrant visitors on November 12, 1993, and were also authorized to stay in the United States until March 28, 1994.

On December 1, 1993, the Ekimians applied for asylum in the United States.[1] In 1995, the Agbu Manoogian Demirdjian School, a fully accredited, K–12 coeducational institution, hired Ekimian as a physical education instructor and educator. Based on Ekimian's performance, school administrators petitioned for the Ekimians' permanent residency by first filing a petition for labor certification with the Department of Labor ("DOL") on October 30, 1995. There was a nearly two-year delay in the DOL's approval of Ekimian's certification. On September 9, 1997, the Immigration and Naturalization Service ("INS") received the DOL's approval; thirty-eight days later, the INS approved the school's I–140 petition (Immigrant Petition for Alien Worker) for Ekimian.[2]

Meanwhile, on June 26, 1995, the INS had administratively denied the Ekimians'

---

[*] The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Tigran Ekimian's wife and son did not make separate requests for asylum but, rather, based their requests on his claim.

2. The INS requires a labor certification from the DOL before it will issue an immigrant visa to an immigrant worker. 8 U.S.C. § 1153(b)(3)(B); 8 U.S.C. § 1182(a)(5).

petition for asylum and had issued Orders to Show Cause why they should not be deported. On March 28, 1996, the immigration judge ("IJ") denied the Ekimians' request for asylum and found them deportable. The IJ allowed the Ekimians to depart voluntarily.

The Ekimians, acting *pro se,* appealed the IJ's decision to the BIA. On April 28, 1997, the BIA denied the appeal. The BIA found that Ekimian was not a "credible claimant for asylum or withholding of deportation" and that he had not met his burden of demonstrating persecution or a well-founded fear of persecution should he return to Armenia. The BIA also rejected Ekimian's claim that he was prejudiced by the IJ's conduct during the proceedings. The BIA ordered the Ekimians to depart by May 28, 1997, and continued their voluntary departures. The Ekimians subsequently filed a petition for review of the BIA's decision.

While the petition for review was pending in this court, the Ekimians, now represented by counsel, filed a motion with the BIA on November 20, 1997, to reopen the deportation proceedings. As grounds for their motion to reopen, the Ekimians pointed out that Tigran Ekimian had received notice from the INS a month before, on October 17, 1997, that his I–140 certification had been approved, and that, based on this approval, he had applied for adjustment of status to lawful permanent resident alien on October 28, 1997. On December 19, 1997, this court denied the Ekimians' petition for review of the BIA's denial of asylum. *Ekimian v. INS,* 133 F.3d 926 (9th Cir. Dec.19, 1997) (unpublished decision).

On February 22, 1999, the BIA denied the Ekimians' motion to reopen as untimely. Under 8 C.F.R. § 3.2(c)(2), a party-filed motion to reopen a proceeding must be filed within ninety days of the date on which the BIA renders a final administrative decision. The BIA had denied the Ekimians' appeal from the IJ's decision on April 28, 1997, which meant that a party-filed motion to reopen under § 3.2(c)(2) had been due on or before July 28, 1997. The Ekimians did not file their motion until November 20 of that year.

The BIA also refused to reopen *sua sponte.* Under 8 C.F.R. § 3.2(a), the BIA may reopen a proceeding "on its own motion" "at any time."

The Ekimians now petition for review of the BIA's refusal to reopen.

## II.   Jurisdiction under the Transitional Rules

Our jurisdiction to review the decision of the BIA in this case is governed by 8 U.S.C. § 1105a (repealed). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L.No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996), repealed 8 U.S.C. § 1105a, but that repeal does not apply to this petition. The parties agree that this case falls under the transitional rules because deportation proceedings against the Ekimians were commenced before April 1, 1997, and a final order of deportation was entered after October 30, 1996.

## III.   Discussion

The Ekimians make two central arguments. First, they argue that their motion to reopen should be treated as if it were timely even though it was made more than ninety days after the BIA denied their appeal from the IJ's denial of their asylum application. Second, they argue that the BIA's refusal to reopen on its own motion,

or *sua sponte*, was an abuse of discretion, and that this court has jurisdiction to review that refusal on an abuse-of-discretion standard. For the reasons that follow, we disagree with both arguments.

### A. Ninety-day Limitation on Party–Filed Motions to Reopen under § 3.2(c)(2)

■ The Ekimians argue that the ninety-day time limit for party-filed motions to reopen contained in 8 C.F.R. § 3.2(c)(2)[3] conflicts with INA §§ 203(a), (b), 8 U.S.C. §§ 1153(a), (b); and INA §§ 245(a), (i), 8 U.S.C. §§ 1255(a), (i). Sections 203(a) and (b) of the INA provide preference in the allocation of immigrant visas to relatives of citizens and lawful permanent residents, as well as to employment-based immigrants. Sections 245(a) and (i) of INA provide for the adjustment of status of a nonimmigrant to that of lawful permanent resident. Nothing in § 3.2(c)(2) negates or is otherwise inconsistent with these statutory directives.

The only effect § 3.2(c)(2) has on an application made pursuant to § 203 and § 245 (*e.g.*, the Ekimians' application) is that a motion to reopen to consider an application for an adjustment of status must be presented to the BIA no later than ninety days after the issuance of a final decision by the BIA. Nothing in the statutory language of §§ 203(a), (b), or §§ 245(a), (i), forecloses the imposition of such a deadline. To the extent that the

Ekimians question the ability of the Attorney General to qualify statutory procedures by regulation, we point out that Congress itself codified the time limit of § 3.2(c)(2) in IIRIRA in 1996 (enacting 8 U.S.C. § 1229a(c)(6)(C)(i)). The statutory language provides: "Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(6)(C)(i). We therefore hold that § 3.2(c)(2) does not conflict with INA §§ 203(a), (b), or §§ 245(a), (i).

### B. The BIA's Refusal to Reopen on its Own Motion

The Ekimians next argue that the BIA abused its discretion in refusing to reopen *sua sponte*. The BIA's *sua sponte* power to reopen deportation proceedings such as the Ekimians' is described in 8 C.F.R. § 3.2(a):

(a) *General. The [BIA] may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.* A request to reopen or reconsider any case in which a decision has been made by the [BIA], which request is made by the [INS], or by the party affected by the decision, must be in the form of a written motion to the [BIA]. The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA], subject to the

---

**3.** 8 C.F.R. § 3.2(c)(2) provides:

Except as provided in paragraph (c)(3) of this section, a party may file only one motion to reopen deportation or exclusion proceedings (whether before the [BIA] or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30,

1996, whichever is later. Except as provided in paragraph (c)(3) of this section, an alien may file only one motion to reopen removal proceedings (whether before the [BIA] or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.

restrictions of this section. The [BIA] has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief.

(Emphasis added, last italic in original.) The italicized sentence provides that the BIA may reopen "on its own motion" "at any time," but it does not specify a standard (even a discretionary standard) that the BIA should apply in deciding whether to reopen. The italicized sentence contrasts with the unitalicized sentences that follow. Those sentences specify that if the parties to the case (the INS or "the party affected by the decision") wish to ask the BIA to reopen a case, they must do so by means of a written motion. They also specify that the BIA's decision to grant or deny such a party-filed motion is "within the discretion of the [BIA], subject to the restrictions of this section."

Under 8 U.S.C. § 1229a(c)(6)(C)(i), IIR-IRA's codification of 8 U.S.C. § 3.2(c)(2), a party has ninety days from the BIA's final administrative order to file a motion to reopen. By contrast, no statutory language authorizes the BIA to reopen a deportation proceeding *sua sponte*. The only basis for any BIA authority to reopen *sua sponte* is found in 8 C.F.R. § 3.2(a).

The Ekimians argue that the BIA's power to reopen a case on its own motion, like its power to grant a party-filed motion, is "within the discretion of the [BIA]"; that the BIA's discretion may be abused; and that this court has jurisdiction to review for abuse of discretion the BIA's refusal to reopen. In refusing to reopen *sua sponte* in the Ekimians' case, the BIA wrote only the following: "The respondents, through counsel, have requested that we reopen their proceedings sua sponte. We do not find sufficient grounds here to warrant reopening this matter sua sponte. *See*

*Matter of J–J–*, Interim Decision (BIA) 3323, 1997 WL 434418 (BIA 2997)[sic]." The BIA's order does not discuss the I 140 petition that had been approved by the INS just before the motion to reopen was filed, or the DOL's two-year delay in processing Ekimian's labor certification petition. Indeed, the order provides virtually no explanation as to why the BIA declined to exercise its *sua sponte* power to reopen in this case. The only fact we can be certain the BIA considered is the date on which the Ekimians filed their motion to reopen.

In *In re J–J–*, referred to as *"Matter of J–J–"* in the BIA's order, the BIA had previously written: "[T]he Board retains limited discretionary powers under the regulations to reopen or reconsider cases on our own motion. 8 C.F.R. § 3.2(a). That power, however, allows the Board to reopen proceedings sua sponte *in exceptional situations* not present here." 21 I. & N. Dec. 976, 984, 1997 WL 434418 (1997) (emphasis added). The Ekimians contend that we have jurisdiction to review the BIA's determination that "exceptional situations" do not exist, and that the BIA's failure to reopen was a reviewable (and reversible) abuse of discretion. *See also In re X–G–W*, 22 I. & N. Dec. 71, 73, 1998 WL 378104 (1998) ("[T]he Board retains limited discretionary powers under [8 C.F.R. § 3.2 of] the regulations to reopen or reconsider cases sua sponte *in unique situations where it would serve the interest of justice.*" (Emphasis added.)), *superseded on other grounds by In re G–C–L–*, 23 I. & N. Dec. 359, 2002 WL 1001051 (2002).

The text of § 3.2(a) does not provide a standard controlling or directing the BIA's decision whether to reopen, and similarly provides no standard for reviewing the

BIA's decision. We take some guidance from the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), where prison inmates in Texas and Oklahoma sought to compel the Food and Drug Administration to enforce a federal law prohibiting the "unapproved use of an approved drug"— *i.e.*, the unapproved use of particular drugs for human execution. *Id.* at 823, 105 S.Ct. 1649. The Supreme Court denied relief, holding that the decision of an administrative agency to exercise its "discretion" not to undertake certain actions is presumed to be immune from review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2). 470 U.S. at 834, 105 S.Ct. 1649. Emphasizing that agencies are better equipped than courts to prioritize administrative concerns and actions, the Court held that:

> even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely.... [I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Id.* at 830, 105 S.Ct. 1649.

The Ekimians suggest that In re J–J– provides a meaningful judicial standard for reviewing the BIA's discretion because it indicates that the BIA will reopen a proceeding *sua sponte* when "exceptional situations" exist. We do not believe that an acknowledgment by the BIA that it may reopen proceedings, and a statement that it will do so under "exceptional situations," without more, authorizes us to review the BIA's decision for abuse of discretion. In *In re J–J–*, the BIA acknowledged only that § 3.2(a) *"allows* the Board to reopen proceedings in exceptional situations"; it did not hold that the regulation *requires* the Board to reopen proceedings in exceptional situations. Moreover, the BIA provided no explanation as to what constitute "exceptional situations"—except that the facts in *In re J–J–* failed to describe them.

The cases in which we have reviewed a BIA decision under an "exceptional circumstances" standard have been those in which a relevant statute explicitly defined what Congress considers an "exceptional circumstance." In *Sharma v. INS*, 89 F.3d 545 (9th Cir.1996), we reviewed whether the BIA erred in refusing to rescind the Sharmas' deportation order after the petitioners claimed they failed to appear for their deportation hearing because of "exceptional circumstances." Under existing immigration law, the Sharmas could justify their failure to appear at the deportation proceeding by showing that "exceptional circumstances" excused their absence. *See* 8 U.S.C. § 1252b(c)(3)(A) (1994) (repealed).[4] "Exceptional circumstances" was defined in the statute as circumstances "beyond the control of the alien," exemplified by "serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances." *Id.* at § 1252b(f)(2) (1994) (repealed). Guided by a statutory definition, we were able to review whether the Sharmas had missed their deportation hearing because of exceptional circumstances, and we held that they had not.

---

4. 8 U.S.C. § 1252b was repealed by IIRIRA.

Likewise, in *Singh Bhathal v. INS,* 170 F.3d 943 (9th Cir.1999), we concluded that petitioner Singh Bhathal's untimely motion to reopen was barred by statute, and held that even if Singh–Bhathal had filed a timely motion to reopen, he could not show that "exceptional circumstances," as defined by 8 U.S.C. § 1252b(f)(2), justified his failure to appear at his deportation hearing. *See also Farhoud v. INS,* 122 F.3d 794 (9th Cir.1997) (alien failed to demonstrate "exceptional circumstances" to excuse his failure to appear at the deportation hearing). Unlike the Sharmas and Singh Bhathal, the Ekimians cannot point to any statutory, regulatory, or case-law definition of "exceptional circumstances" applicable to the BIA's *sua sponte* power under § 3.2(a).

■ Because we cannot discover a sufficiently meaningful standard against which to judge the BIA's decision not to reopen under § 3.2(a), we hold that we do not have jurisdiction to review the Ekimians' claim that the BIA should have exercised its *sua sponte* power. In doing so, we join the First Circuit, which, in *Luis v. INS,* 196 F.3d 36 (1st Cir.1999), affirmed the BIA's denial of a motion to reopen on the grounds that the motion was untimely and that petitioner Luis failed to argue to the BIA that it should have exercised its *sua sponte* power. It then stated:

> Assuming arguendo that Luis would have exhausted her administrative remedies [by raising the *sua sponte* argument below], this court still has no jurisdiction to review this claim because *the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion.* Therefore, the very nature of the claim renders it *not subject to judicial review.*

*Id.* at 40 (emphasis added). The First Circuit wrote that under *Heckler,* the lack of guidelines and standards dictating the BIA's *sua sponte* power deprived the court of "jurisdiction to review Luis's claim that the BIA should have invoked its sua sponte authority to reconsider her motion to reopen the deportation proceedings." *Id.* at 41. *See also Prado v. Reno,* 198 F.3d 286, 292 (1st Cir.1999) ("[B]ecause 'the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion,' Prado's claim is simply not justiciable." (citation omitted)).

The position of other circuits on this issue is somewhat ambiguous, but no other circuit has squarely held that the BIA's refusal to invoke its *sua sponte* authority under § 3.2(a) is subject to judicial review. *Cf. Socop Gonzalez v. INS,* 208 F.3d 838 (so holding), *vacated by* 229 F.3d 860 (9th Cir.2000) (ordering rehearing en banc). In *Wang v. Ashcroft,* 260 F.3d 448 (5th Cir. 2001), the Fifth Circuit noted but failed to reach the question of reviewability. In *Anin v. Reno,* 188 F.3d 1273, 1279 (11th Cir.1999), the Eleventh Circuit wrote that § 3.2(a) "gives the BIA non-reviewable discretion to dismiss Anin's claim. We can find no abuse of discretion here." The *Anin* court seemed to state simultaneously (and inconsistently) that the BIA's discretion to deny a motion to reopen is non-reviewable, and that in reviewing the denial it found no abuse of discretion. (Or it is conceivable that the *Anin* court, in saying that it "can find no abuse of discretion," meant that it had no jurisdiction to find otherwise.) *Cf. Mejia Rodriguez v. Reno,* 178 F.3d 1139, 1145 n. 5 (11th Cir.1999) (stating "the BIA did not abuse its discretion [under § 3.2(a)] in concluding that Mejia's arguments did not justify the reopening of his deportation proceedings").

## Conclusion

Based on the foregoing, we conclude that the Ekimians' motion to reopen was

untimely, and that we do not have jurisdiction to review the BIA's refusal to reopen deportation proceedings *sua sponte*.

The Ekimians' petition for review is therefore DENIED.

BRIGHT, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that we lack jurisdiction to review a BIA decision not to reopen deportation proceedings *sua sponte*. I would grant the petition for review and remand to the BIA. In my view, this is a case where the interest of justice demands that an administrative agency be held accountable for its decisions. The liberty interests of the Ekimian family, who have now been living in the United States for nearly nine years, require no less.

In its brief to this panel, the Immigration and Naturalization Service ("INS") writes,

> Moreover, the decision to reopen *sua sponte* is purely an act of grace on the part of the Board. There being no standard for the Board to apply in exercising its unfettered discretion, an analysis of the Board's reasons for not reopening *sua sponte* is not required.

In this country and under our laws, we typically do not leave individuals' liberty interests to the "grace" of bureaucrats, even well-intentioned bureaucrats. It is only the rarest of cases where discretion is left entirely unfettered. *See, e.g., Abbott Lab. v. Gardner*, 387 U.S. 136, 139–41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (discussing the general presumption that all agency decisions are reviewable absent clear and convincing evidence of contrary legislative intent). Appellate review is the hallmark of our judicial system. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 166, 2 L.Ed. 60 (1803) ("[W]here a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear, that the individual who considers himself injured, has the right to resort to the laws of his country for a remedy.").

The BIA denied the Ekimians' motion to reopen in a single, cursory paragraph:

> PER CURIAM. The motion to reopen has been filed out of time and will be denied. Our prior order in these proceedings was entered on April 28, 1997. Pursuant to 8 C.F.R. § 3.2(c)(2) (with certain exceptions not pertinent here), a motion to reopen in any case previously the subject of a final decision by the Board must be filed not later than 90 days after the date of that decision. *See* 61 Fed.Reg. 18,900 (1996). In the instant case, a motion to reopen would have been due on or before July 28, 1997. The record reflects that the Board received the motion on November 10, 1997, rejected it for defects and it was properly filed on November 20, 1997. The motion to reopen was therefore filed out of time. Accordingly, the motion to reopen is denied. The respondents, through counsel, have requested that we reopen their proceedings sua sponte. We do not find sufficient grounds here to warrant reopening this matter sua sponte. *See Matter of J–J–*, Interim Decision (BIA) 3323, 1997 WL 434418 (BIA 2997)[sic]. As we have denied the motion to reopen, the motion for stay of deportation is also denied.

As the majority opinion acknowledges, the decision does not discuss Mr. Ekimian's recently approved Labor Certification, it provides no indication that the BIA considered the Department of Labor's two-year delay in processing Mr. Ekimian's

certification, and it does not provide any explanation as to why the BIA declined to exercise its *sua sponte* power to reopen this case where the petitioner had become eligible to remain legally in the country as a permanent resident. All we know is that the BIA considered the date on which the Ekimians filed their motion to reopen.

The majority accepts the INS's argument that federal appellate review is precluded because there is no meaningful judicial standard under which we can review the BIA's power to reopen deportation proceedings on its own motion. In my view, there is an adequate standard by which we can review the BIA's discretionary decision.

It is true that the regulation promulgated by the Attorney General in 1996, 8 C.F.R. § 3.2(a), does not specify when the BIA should exercise its *sua sponte* power.[1] However, the BIA has ruled that it will reopen cases in "exceptional situations." *See Matter of J–J–,* 21 I. & N. Dec. 976, 984, 1997 WL 434418 (1997) (explaining that 8 C.F.R. § 3.2(a) allows the BIA "to reopen proceedings *sua sponte* in exceptional situations … [but] is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship."); *see also In re G–D–,* 22 I. & N. Dec. 1132, 1999 WL 1072237 (1999) ("As a general matter, we invoke our *sua sponte* authority sparingly, treating it not as a general remedy for any hardships

created by enforcement of the time and number limits in the motions regulations, but as an extraordinary remedy reserved for truly exceptional situations."); *In re L–V–K,* 22 I. & N. Dec. 976, 1999 WL 607159 (1999) (same); *In re X–G–W–,* 22 I. & N. Dec. 71, 73, 1998 WL 378104 (1998) (explaining that the *sua sponte* authority to reopen can be exercised "in unique situations where it would serve the interest of justice"). *See generally* Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900, 18,902 (1996) ("[S]ection 3.2(a) of the rule provides a mechanism that allows the Board to reopen or reconsider *sua sponte* and provides a procedural vehicle for the consideration of cases with exceptional circumstances.")

Certainly this body of agency law combined with the other cases cited by the majority pertaining to exceptional circumstances ought to be sufficient for us to unearth a meaningful standard of review; especially, when the alternative is to leave matters to the "unfettered" "grace" of the agency. In a slightly different context, we have determined that when a decision is committed to the BIA's discretion, "[t]his court has required the Board to 'state its reasons and show proper consideration to all factors when weighing equities and denying relief.'" *Tukhowinich v. INS,* 64 F.3d 460, 463 (9th Cir.1995) (quoting *Hassan v. INS,* 927 F.2d 465, 467 (9th Cir. 1991)) (reviewing the BIA's denial of Tukhowinich's application for the suspension of deportation for lack of extreme hardship).

---

**1.** The majority opinion points out that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 codified § 3.2(c)(2)'s ninety-day time limitation for party-initiated motions to reopen, but the 1996 Act did not codify the regulation's grant of BIA *sua sponte* authority to reopen. While this is certainly worth noting, the current regulation still authorizes the BIA to reopen

deportation hearings on its own motion at any time. Furthermore, Congress' apparent decision not to codify a particular regulation in statute is not sufficient "clear and convincing evidence" of legislative intent to restrict judicial review. *See Abbott Lab.,* 387 U.S. at 141, 87 S.Ct. 1507 (requiring clear and convincing evidence to restrict access to judicial review).

Furthermore, the BIA "must indicate how it weighed the factors involved and how it arrived at its conclusions" because "[m]ere conclusory statements are not sufficient." *Georgiu v. INS*, 90 F.3d 374, 375–76 (9th Cir.1996) (reviewing the BIA's denial of Georgiu's petition for relief under 8 U.S.C. § 1182(c) (now repealed)). *See also Arrozal v. INS*, 159 F.3d 429, 432 (9th Cir.1998) ("The BIA abuses its discretion when it fails to state its reasons and show proper consideration of *all* factors when weighing equities and denying relief.") (emphasis in original) (citations omitted).

Appellate review of the BIA's decision not to reopen would be necessarily limited in scope. Generally, BIA decisions that provide adequate reasons for not reopening would be summarily upheld, but appellate review would allow for cases like that at bar to be revisited when the interest of justice demands it. For example in the Ekimians' case, the question would be whether it was an abuse of discretion for the BIA to deny reopening with only a conclusory statement and without any indication that it considered all the equities of the case.

Under this standard, I would reverse the BIA's decision because it gave no indication of considering certain pertinent factors in denying the Ekimians' relief. Specifically, the BIA did not consider any of Mr. Ekimian's arguments for reopening, including his argument that the two-year delay in processing his labor certification prevented him from timely filing his motion to reopen. Nor did the BIA consider the fact that because Mr. Ekimian possessed an approved employment-based visa petition with a current priority date he could adjust status to become a permanent resident immediately, thereby ending the matter. Nor did the BIA consider the impact of its denial on Mr. Ekimian or his wife and son or the fact that, if deported, all three would be barred from the United States for ten years.

The majority finds guidance in *Heckler v. Chaney*, 470 U.S. 821, 831–33, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). I believe that the majority's reliance on *Heckler* is misplaced because the decision not to reopen deportation proceedings *sua sponte* significantly differs from *Heckler v. Chaney*'s agency decision not to enforce a federal regulation prohibiting the use of a particular drug. The Supreme Court concluded that the FDA's decision not to enforce the regulation should be presumed immune from judicial review because the agency is better equipped than the courts to determine its administrative enforcement actions and because the refusal to act has no coercive impact on an individual's liberty or property rights. *Id.* at 832, 105 S.Ct. 1649.[2]

In the instant case, however, the BIA's decision not to reopen deportation proceedings was a coercive act. The BIA decision lifted the stay on the Ekimians' deportation. In effect, the BIA's decision results in the Ekimians' deportation. In this regard, the BIA's action cannot be analogized to situations of prosecutorial discretion where there has been a decision *not* to institute proceedings. In the BIA

---

**2.** A more comprehensive analysis of why *Heckler v. Chaney* is inapposite in the context of the BIA's decisions not to reopen deportation proceedings is available in *Socop–Gonzalez v. INS*, 208 F.3d 838, 843–45 (9th Cir. 2000). In this case, the Ninth Circuit granted a petition for rehearing en banc and vacated the panel opinion. *Reh'g en banc granted*, No. 98–70782, 2000 WL 1468772 (Sept. 29, 2000). The en banc court held that the ninety-day filing period is subject to equitable tolling, but did not "reach the question whether the BIA should have exercised its *sua sponte* power to reopen." 272 F.3d 1176, 1183 (9th Cir.2001) (en banc).

context, proceedings are already underway and any action taken by the BIA will alter the status quo. The Court in *Heckler* was concerned that when an agency does not act, there will be no "focus for judicial review." 470 U.S. at 823, 105 S.Ct. 1649. In the instant case, the BIA's decision not to reopen when Mr. Ekimian was able to present a recently granted Labor Certification Petition presents a clear focus for judicial review.

Finally, the majority is taking a position that no circuit court has previously held. In *Luis v. INS*, 196 F.3d 36 (1st Cir.1999), the First Circuit's discussion of the BIA's *sua sponte* power to reopen is only dicta because the petitioner in that case had failed to exhaust her administrative remedies.

For these reasons, I would conclude that the BIA abused its discretion and remand to the BIA for further proceedings.