# In re X-G-W-, Applicant

*Decided June 25, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Due to a fundamental change in the definition of a "refugee" brought about by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, the Board of Immigration Appeals will allow reopening of proceedings to pursue asylum claims based on coerced population control policies, notwithstanding the time and number limitations on motions specified in 8 C.F.R. § 3.2 (1997).

John C. Lin, Esquire, New York, New York, for applicant

Dione M. Enea, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; VACCA, HOLMES, HURWITZ, VIL-LAGELIU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, and GRANT, Board Members. Concurring Opinion: FILPPU, Board Member. Dissenting Opinion: HEILMAN, Board Member.

SCHMIDT, Chairman:

The applicant has filed a motion to reopen exclusion proceedings asking the Board to reconsider our prior decision in this case, dated May 10, 1996, denying asylum in the United States and withholding of deportation to the People's Republic of China. The motion to reopen is untimely. We would therefore normally lack jurisdiction to consider it. *See* 8 C.F.R. § 3.2(c) (1997). However, because of the significant changes to the asylum law enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), we will consider motions to reopen to apply for asylum based on coerced population control policies pursuant to this Board's authority "to reopen or reconsider on its own motion in any case in which we have rendered a decision." *See* 8 C.F.R. § 3.2(a). We will grant the applicant's application for asylum on a conditional basis, and we also will grant his application for withholding of deportation.

## I. PROCEDURAL HISTORY

In our prior decision in this case, we found the applicant excludable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994), for failure to possess a valid immigrant visa upon his arrival in the United States. Further, we agreed with the Immigration Judge that, notwithstanding the applicant's credible testimony concerning his punishment for violating China's "one couple, one child" policy, enforcement of the family planning policy was not, by itself, deemed to create a well-founded fear of persecution based on race, religion, nationality, membership in a particular social group, or political opinion. *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989); *see also Matter of G-*, 20 I&N Dec. 764 (BIA 1993). We therefore dismissed the applicant's appeal on May 10, 1996.

Sweeping changes in the immigration laws were enacted 4 months later. Pertinent to this case, section 601(a)(1) of the IIRIRA, 110 Stat. at 3009-689, amended the definition of a "refugee" by adding the following:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42)(Supp. II 1996).

In light of this significant change in the asylum law, the applicant, through counsel, filed with the Board a motion to reopen exclusion proceedings, arguing that under section 601 of the IIRIRA, he is now eligible for a grant of asylum and withholding of deportation based on his punishment for violating China's "one couple, one child" policy.

## II. LIMITS ON REOPENING

Pursuant to the regulations at 8 C.F.R. § 3.2(c)(2), only one motion to reopen is allowed and must be filed with the Board not later than 90 days after the date on which the final administrative decision was rendered, or, on or before September 30, 1996, whichever date is later. The applicant's motion to reopen our May 10, 1996, order was not filed until February 6, 1997. It is therefore untimely.

The time and number limitation set forth in 8 C.F.R. § 3.2(c)(2), does not, however, apply to (1) motions to reopen certain types of in absentia cases, (2) motions to reopen that are agreed upon by all parties, or (3) motions to reopen to apply or reapply for asylum or withholding of depor-

tation based on changed circumstances arising in the country of national-
ity, if such evidence is material and was not available and could not have
been discovered or presented at the former hearing. 8 C.F.R. § 3.2(c)(3),
The applicant's motion to reopen does not arise in the context of an in
absentia proceeding, does not proffer evidence of changed circumstances
arising in China, and is opposed by the Service. Thus it does not fall with-
in any of the exceptions enumerated in 8 C.F.R. § 3.2(c)(3).

In addition to the exceptions listed above, the Board retains limited
discretionary powers under the regulations to reopen or reconsider cases
sua sponte in unique situations where it would serve the interest of jus-
tice. *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997); 8 C.F.R. § 3.2(a). We
find that this case represents such a situation.

This case presents a difficult dilemma for the Board because a marked
change in the refugee law, which was meant to provide relief to individu-
als suffering persecution on account of coerced population control poli-
cies, is running up against a change in the regulations intended to bring
finality to immigration decisions and to prevent successive and frivolous
motions designed to delay deportation. We believe that the change in the
asylum law supports reopening in this case for reasons similar to those
that allow reopening to apply for asylum based on changes in country
conditions in the alien's country of nationality. 8 C.F.R. § 3.2(c)(3)(ii).
There is no indication that the applicant in this proceeding delayed apply-
ing for asylum or purposefully filed dilatory motions, which is what the
1996 motions regulations sought to prevent. Rather, a significant change
in the immigration law made relief available to the applicant on the basis
of the same asylum application he filed initially, and he has filed his
motion promptly following the new developments.

In response to this situation, affecting many of our recently decided
cases, we will accept motions to reopen, which might otherwise be barred
by 8 C.F.R. § 3.2(c)(2), to pursue applications for asylum based on
coerced population control policies. The motions should continue to be
filed in accordance with all other regulatory requirements for filing a
motion to reopen, including the submission of the appropriate fee or fee
waiver form.


### III. THE ASYLUM CLAIM


The applicant testified at his hearing that he and his wife had two
children in China born 1 year apart. This is a violation of the "one couple,
one child" policy, which at most allows for a second child, under certain
circumstances, after a determined number of years have passed since the
birth of the first child. Bureau of Democracy, Human Rights and Labor,
Dep't of State, *China - Country Conditions and Comments on Asylum*

*Applications* (Dec. 20, 1994). As a result of their violation, the applicant's wife was made to undergo a tubal ligation, the applicant and his wife were fined, and the applicant was dismissed from his government forestry job. The Immigration Judge found the applicant's testimony to be credible and determined that there were no adverse factors that would prevent an asylum grant. Indeed, the Immigration Judge concluded that he would have granted the applicant's request for asylum were it not for the Board's holding in *Matter of Chang, supra.*

The applicant's punishment for violating China's population control policies falls squarely within section 101(a)(42) of the Act, as amended by section 601 of the IIRIRA, which supersedes our prior ruling in *Matter of Chang, supra.* Under the new refugee definition, the applicant appears to have suffered past persecution in China on account of political opinion and is presumed under 8 C.F.R. § 208.13(b)(1) (1996) to have a well-founded fear of future persecution. *Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996); *see also Matter of H-*, 21 I&N Dec. 337 (BIA 1996). This presumption may be rebutted by a showing that country conditions have changed to the extent that the applicant no longer has a well-founded fear of persecution if returned to China. Such a rebuttal has not been offered. Indeed, the Immigration and Naturalization Service stated that it was willing to discuss with the applicant the possibility of filing a joint motion at a later date. Therefore, the applicant's application for asylum will be granted on a conditional basis under *Matter of X-P-T-*. The applicant is also entitled to withholding of deportation under *Matter of X-P-T-, supra.*

## IV. CONCLUSION

Due to the fundamental change in asylum law enacted by the IIRIRA, the Board will allow reopening for asylum claims based on coercive family planning policies, which might otherwise be barred by 8 C.F.R. § 3.2(c)(2), where the alien had previously presented persuasive evidence of persecution based on China's "one couple, one child" policy, and where the Board previously denied asylum based on *Matter of Chang, supra*. The motion must be properly filed with the Board and must be supported by evidence of prima facie eligibility for asylum based on the new definition of a refugee. In this case, we will reopen the applicant's proceedings and grant his application for asylum, on a conditional basis, and his application for withholding of deportation.

**ORDER:** The motion to reopen is granted and the Immigration Judge's September 12, 1995, order of exclusion and deportation is vacated.

**FURTHER ORDER:** The applicant is granted asylum, conditioned upon an administrative determination by the Immigration and Naturalization Service that a number is available for such a grant under

section 207(a)(5) of the Act, 8 U.S.C. § 1157(a)(5)(Supp. II 1996).

**FURTHER ORDER:** The applicant is granted withholding of deportation.

Vice Chairman Mary Maguire Dunne, and Board Members Philemina M. Jones and Lori S. Scialabba did not participate in the decision in this case.

*CONCURRING OPINION:* Lauri Steven Filppu, Board Member

I respectfully concur.

I write separately because I find much force in the views expressed by the dissent and because I am troubled by the failure of the majority to address the regulatory history of the current motion regulations, a history which shows some consideration and rejection of "changed law" as a basis for overriding the general limitations on motions to reopen. 61 Fed. Reg. 18,900, 18,901-02 (1996).

I agree with the dissent that we should ordinarily leave it to the Attorney General or Congress to prescribe whether changes in the law should be accompanied by a relaxation of the time and number restrictions on motions. After all, many changes in substantive law do not automatically translate into a grant of benefits. For example, a particular change may simply create new opportunities to *apply* for discretionary relief, creating varying degrees of possible success for different applicants. Aliens who have final determinations requiring their departure should not routinely be entitled to reopening, under the Board's own authority, merely because they have remained in the United States long enough after their final orders, such that they can advance some facially plausible arguments for eligibility under new legislation.

Nevertheless, I do not understand the majority to set any precedent as to how we may view other changes in law in relation to invoking our own authority to reopen cases irrespective of the time and numerical limitations contained in the regulations. Rather, we have before us an unusual situation. Congress has, in effect, reversed the result of our past case law in relation to so-called "coercive population control" persecution cases. While the relevant legislation set a numerical limit with regard to asylum grants, no such limit exists as to grants of withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) (1994), or withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (Supp. II 1996), as enacted by section 307(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-612. And, importantly, in my view, the applicant here is clearly entitled to section 243(h) relief by virtue of the Immigration Judge's rulings below and our decisions in *Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996), and

*Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997).

For these reasons, as well as the majority's reasons, I find this case to present an exceptional situation, and I therefore concur in the majority's orders. *See Matter J-J-*, 21 I&N Dec. 976 (BIA 1997).

*DISSENTING OPINION*:  Michael J. Heilman, Board Member

I respectfully dissent.

The applicant's motion to reopen is untimely and does not fall within any of the exceptions enumerated in 8 C.F.R. § 3.2(c)(3) (1997). The majority cites an important change in the asylum law as the reason for taking, sua sponte, untimely motions to reopen based on coerced population control policies. While I would agree that the change in the asylum law is important, there is simply no authority in the regulations for allowing reopening out of time based on changes in law.

The majority recognizes a conflict in our laws. Section 601 of  the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRI-RA"), changed the definition of a "refugee" in the Immigration and Nationality Act to include those who have suffered persecution as a result of coerced population control policies. However, of equal significance, section 545(d) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5066, commands the Attorney General to promulgate regulations which establish strict practice guidelines before the Board and the Immigration Courts for the express purpose of expediting review and putting an end to successive and dilatory motions meant to delay deportation. *See* section 242 of the Act, 8 U.S.C. § 1252 (1994); *Stone v. INS,* 514 U.S. 386, 400 (1995).

In response to proposed motions regulations, commenters argued that a 90-day period was insufficient time for aliens to present new evidence, avail themselves of changes in law, or seek additional forms of relief. In promulgating the final rule, the Department of Justice summarized the reasoning behind the new regulation as follows:

> After careful consideration, the Department has decided to retain both the time and number limitations applicable to motions to reopen. The provision instituting motions reform is statutorily required. The Immigration Act of 1990 states that "the Attorney General shall issue regulations with respect to * * * the period of time in which motions to reopen and to reconsider may be offered in deportation proceedings, which regulations shall include a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions." The Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. No. 955, 101st Cong., 2d Sess. (1990) . . . , explained this provision as follows: "Unless the Attorney General finds reasonable evidence to the contrary, the regulations should state that such motions be made within 20 days of the date of the final determina-

tion in the proceeding and that such motions be limited to one motion to reopen and one motion to reconsider."

. . . .

After carefully weighing all of the comments, the Department has decided to retain the amount of time to file a motion to reopen at 90 days as provided in the May 1995 proposed rule. The 90-day time period represents a considerable extension beyond the 20 days suggested in the Conference Report. A time frame of 90 days for filing motions to reopen will provide parties an opportunity to avail themselves of *changed law,* facts, and circumstances.

Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900, 18,901-02 (1996) (emphasis added) (citations omitted).

It is clear, therefore, that the approach adopted by the majority was specifically considered and rejected in promulgating 8 C.F.R. § 3.2(c). We should thus not use our limited power to reopen sua sponte to circumvent the regulations where we believe it would be fair to do so. *Matter of J-J.* 21 I&N Dec. 976 (BIA 1997). We are bound by the regulations. *Matter of Ponce de Leon*, 21 I&N Dec. 154 (BIA 1996). They mark the extent of our jurisdiction and must be faithfully observed, as they are mandatory and not subject to our equitable discretion. Therefore, in a situation such as this, where a change in law would generate time or number barred motions to reopen, only Congress or the Attorney General should provide for either another exception in the regulations or for an orderly fix to the immediate inconsistency. It should not be up to the Board to give one change in law greater importance than the other or to resolve a conflict in the laws by carving out an exception in the regulations where one does not exist. As we noted in *Matter of Tiwari,* 19 I&N Dec. 875 (BIA 1989), "A fundamental rule of statutory construction is that 'a specific provision prevails over a more general one. . . .'" *Id.* at 881 (quoting *Castaneda-Gonzalez v. INS,* 564 F.2d 417, 423 (D.C. Cir. 1977)).

An example of an orderly regulatory fix for a change in law can be found in section 203 of the Nicaraguan Adjustment and Central American Relief Act, Title II of Pub. L. No. 105-100, 111 Stat. 2193, 2196 (1997) ("NACARA"), which allows certain aliens from Guatemala, El Salvador, and Eastern Europe who have final orders of removal to file motions to reopen to apply for suspension of deportation based on a change in law making suspension of deportation available to them. NACARA specified that the Attorney General would designate a time period in which motions to reopen could be filed with the Board or the Immigration Courts without regard to the time and number restrictions of 8 C.F.R. § 3.2. Notice was accordingly issued in the regulations by the Attorney General allowing a 240-day period in which special NACARA motions could be filed. *See* Motion to Reopen: Suspension of Deportation and Cancellation of

Removal, 63 Fed. Reg. 3154 (1998). As the IIRIRA did not authorize any exception to the motions regulations for victims of coerced population control persecution, I respectfully dissent.