

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2004

# Jing v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2603

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jing v. Atty Gen USA" (2004). *2004 Decisions.* Paper 412.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/412

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2603

WEI-YU JING, a.k.a. Gek-Kiang Lee,
a.k.a. Wei-Rong Jin;
CHUN-FU WANG, a/k/a Duk-Yun Je,
Petitioners

v.

JOHN ASHCROFT,
Attorney General of the United States,
Respondent

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA Nos. A73-476-713
and A73-476-718

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2004

Before: RENDELL, FISHER and VAN ANTWERPEN, Circuit Judges.

(Filed: August 6, 2004)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Wei-Yu Jing and her husband, Chun-Fu Wang, petition for review of a decision

by the Board of Immigration Appeals ("BIA") to deny their second motion to reopen their removal proceedings. Jing and Wang are citizens of the People's Republic of China and claim that they suffered under that country's population control policies. The petitioners' second motion to reopen relied upon their having two children, which they claimed would result in forced sterilization by the Chinese authorities upon their return. The BIA denied their second motion to reopen for two reasons. First, the BIA determined that it was not obligated to consider petitioners' multiple motions to reopen, and, second, the BIA observed that as the petitioners already had two children when they filed their first motion to reopen, their failure to raise the argument in the prior motion constituted a lack of due diligence. The petitioners ask us to set aside the BIA's discretionary decision to deny their second motion to reopen. We will dismiss their petition for review for lack of jurisdiction.

I

The petitioners arrived in the United States in January of 1995. In the asylum application, Jing indicated that after the birth of her first child, a boy, she wished to give birth to a daughter. But she was thwarted by the Chinese authorities who threatened to levy a fine unless she underwent an intra-uterine device ("IUD") implant. After the procedure, the petitioners fled China and eventually arrived in the United States.

On April 22, 1996, the BIA rejected the petitioners' asylum application, relying on Board precedent that limited relief to claims based on China's population control

2

policies. *Matter of Chang*, 20 I. & N. Dec. 38 (BIA 1989). *Chang* was later superseded by the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-689 (1996). Section 601 of IIRIRA modified the definition of "refugee" to recognize asylum claims brought by those forced to abort a pregnancy or to undergo involuntary sterilization as part of a "coercive population control program." 8 U.S.C. § 1101(a)(42).

On December 7, 1998, the petitioners moved the Board to reopen their case based upon § 601's amendment to the definition of refugee. Ordinarily, a petitioner may file a maximum of one motion to reopen, which he must do within 90 days of the final administrative decision. 8 C.F.R. § 1003.2(c)(2). As it was filed more than two years past the BIA's adverse decision on April 22, 1996, the petitioners' motion would have been considered untimely. However, the Board enacted a policy in June of 1998 that set out an exception to these filing restrictions in cases involving population control policies. The BIA ruled that:

> Due to the fundamental change in asylum law enacted by the IIRIRA, the Board will allow reopening for asylum claims based on coercive family planning policies, which might otherwise be barred by 8 C.F.R. § 3.2(c)(2), where the alien had previously presented persuasive evidence of persecution based on China's "one couple, one child" policy, and where the Board previously denied asylum based on *Matter of Chang*.

*In re X-G-W-*, 22 I. & N. Dec. 71 (BIA 1998). In light of *X-G-W-*, the BIA chose to consider the petitioners' otherwise untimely motion to reopen their asylum proceedings. Nevertheless, on May 27, 1999, the BIA denied the petitioners' motion. Among other

3

things, the BIA ruled that because Jing was not forced to undergo an abortion and as neither Jing nor Wang was forcibly sterilized, the IUD implantation did not rise to the requisite level of persecution.

Nearly three and a half years after filing their first motion to reopen, the petitioners filed a second motion to reopen their proceedings on June 3, 2002. In their second motion to reopen, the petitioners claimed that the birth of their second child would lead to forcible sterilization by government authorities upon their return to China. The BIA rejected this second motion on May 1, 2003. The Board noted that while the petitioners' second child was born on January 30, 1998, about a year before their first motion to reopen, the petitioners waited until June of 2002 to raise it to the BIA's attention. Accordingly, the BIA found that the petitioners "failed to exercise due diligence in their case." Further, the BIA determined that Board precedent did not permit multiple motions to reopen.

The petitioners timely appealed to this Court.

II

On appeal, the petitioners essentially raise two challenges to the BIA's order. First, they contend that the BIA misapplied its precedent by holding that multiple motions to reopen were impermissible. Second, they argue that the motion to reopen should have been granted as they established prima facie eligibility for asylum and withholding of removal. Before considering the issues presented, we first examine

whether we have jurisdiction to consider this petition for review. It is of course "axiomatic that this court has a special obligation to satisfy itself of its own jurisdiction." *Urena-Tavarez v. Ashcroft*, 367 F.3d 154, 157 (3d Cir. 2004) (quoting *United States v. Touby*, 909 F.2d 759, 763 (3d Cir.1990)).

A

Although the parties do not raise the issue, we are without jurisdiction to review the BIA's decision to decline to reopen the proceedings. Congress has determined that an "alien may file one motion to reopen proceedings" which should be "filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(6)(A), (C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). Under § 1003.2(a), however, the BIA has the authority to reopen a proceeding *sua sponte* at any time.

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. A request to reopen or reconsider any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board. The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 1003.2(a). It is this *sua sponte* authority, reserved for "exceptional situations," *see In re J-J-*, 21 I. & N. Dec. 976 (BIA 1997), that the BIA relied upon in deciding the *X-G-W-* case.

As noted above, in *X-G-W-*, the BIA announced an exception to its rule allowing

5

only one motion to reopen within 90 days of a final agency determination.  The BIA's

opinion clearly indicates that the Board's based its new policy on § 1003.2(a)'s

discretionary authority.  "[T]he Board retains limited discretionary powers under the

regulations to reopen or reconsider cases sua sponte in unique situations where it would

serve the interest of justice.  We find that this case represents such a situation." *In re X-*

*G-W-*, 22 I. & N. at 73; *see also id.* at 71 ("we will consider motions to reopen to apply

for asylum based on coerced population control policies pursuant to this Board's

authority 'to reopen or reconsider on its own motion in any case in which we have

rendered a decision.'" (quoting § 1003.2(a)).

  We have had occasion to consider our jurisdiction to review BIA decisions that

rely on its *sua sponte* discretionary powers.  In *Calle-Vujilles v. Ashcroft*, 320 F.3d 472

(3d Cir. 2003), the petitioner argued that the BIA should have used its discretionary

powers under § 1003.2(a) to *sua sponte* reopen or reconsider his deportation

proceedings.  Citing the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821

(1985), we held that "the decision of the BIA whether to invoke its sua sponte authority

is committed to its unfettered discretion.  Therefore, the very nature of the claim renders

it not subject to judicial review." *Calle-Vujilles*, 320 F.3d at 474 (quoting *Luis v. INS*,

196 F.3d 36, 40 (1st Cir. 1999)); *accord Ekimian v. INS*, 303 F.3d 1153, 1154 (9th Cir.

2002) (holding that the court "lack[ed] jurisdiction to review a BIA decision not to

reopen the proceeding sua sponte under 8 C.F.R. § 3.2(a)"); *Anin v. Reno*, 188 F.3d

6

1273, 1279 (11th Cir. 1999) ("§ 3.2(a) gives the BIA non-reviewable discretion to dismiss [a petitioner's] claim.").

The petitioners ask us to review a decision based on the BIA's discretionary policy announced in *X-G-W-* . Because that decision rested on the BIA's refusal to exercise its discretionary sua sponte powers, we are without jurisdiction to consider the petition for review.

B

Even were we to review the BIA's denial of petitioners' motion to reopen, we would conclude that the BIA did not abuse its discretion in any manner. *Sevoian v. Ashcroft*, 290 F.3d 166, 170–71 (3d Cir. 2002) (BIA's denial of motion to reopen proceedings are reviewed for abuse of discretion and subsidiary findings of fact for substantial evidence).

The BIA's permissive policy, announced in *X-G-W-*, of considering untimely motions to reopen based on coercive population control policies was later withdrawn. *In re G-C-L-*, 23 I. & N. Dec. 359 (BIA 2002) (en banc) (withdrawing *X-G-W-* policy on July 9, 2002). The petitioners' filed their second motion to reopen on June 3, 2002, relying on *G-C-L-* and its predecessor *X-G-W-*. The petitioners argue that the BIA mistakenly interpreted its own precedent in holding that those earlier cases did not permit the filing of multiple motions to reopen.

We accord a great degree of deference to an agency's interpretation of its own

regulations. In the immigration context, this Court has held that we must defer to the BIA's interpretations of its own regulations unless they are "plainly erroneous or inconsistent with the regulation." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001). We find nothing erroneous or inconsistent with the Board's application of its own precedent in this case.

As the BIA explained in *G-C-L-*, *X-G-W-* permitted the suspension of the filing restrictions embodied in 8 C.F.R. § 1003.2(c)(2) "to afford individuals both a means to promptly respond to the *change in law* and a reasonable period of time in which to do so." *In re G-C-L-*, 23 I. & N. at 362 (emphasis supplied). Once a petitioner has had the opportunity to file a motion to reopen in light of the new law, neither the logic nor the text of the opinions obligate the Board to consider numerous, additional motions to reopen. Here, the BIA permitted the petitioners to file a motion to reopen well beyond the 90-day deadline of § 1003.2(c)(2) to take advantage of the change in asylum law. Having done so, the BIA was not required to consider yet another motion to reopen based on the same change in law.

Further, we agree with the BIA that the arguments in their second motion to reopen, based on the birth of their second child, could have been raised in their first motion to reopen. The BIA was well within its discretion in denying the petitioners' second motion to reopen based on a failure to exercise due diligence. In any event, and as discussed above, we hold that we lack the jurisdiction to review the BIA's denial of

8

the petitioners' motion.

## III

We will deny the petition for review for lack of appellate jurisdiction.

———————————————