

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2007

# Cao v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cao v. Atty Gen USA" (2007). *2007 Decisions*. Paper 1229.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1229

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1290

YI HUA CAO,
                    Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                    Respondent

On Petition for Review of a Final Decision
of the Board of Immigration Appeals
BIA No. A72-498-797

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 12, 2007

Before: SMITH and COWEN, *Circuit Judges*,
and YOHN, *District Judge\**

(Filed: April 24, 2007)

OPINION

*The Honorable William H. Yohn Jr., Senior District Judge for the Eastern District
of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

Yi Hua Cao petitions for review of the denial by the Board of Immigration Appeals ("BIA") of his third motion to reopen his immigration proceedings. Cao argues that the BIA erred in refusing to reopen his proceedings, and that he meets the prima facie requirements for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because Cao's petition fails to establish the "changed circumstances" exception to the time and numeric limitations contained in 8 C.F.R. § 1003.2(c)(2), we will deny the petition for review.

Cao is a citizen of the People's Republic of China. He claims to have fled China in October 1991 to escape persecution arising out of China's coercive family planning policy. He entered the United States without a valid immigrant visa on March 26, 1993 (J.A. 392), and filed an application for asylum and withholding of removal.[1] An immigration judge ("IJ") held a hearing on September 17, 1993. Cao testified that after he left China in 1991, state officials threatened his wife with a forced abortion during her first pregnancy. He also claimed that because she was unable to pay a fine, she was forced to have a contraceptive device implanted after the birth of their first child in China. However, he later testified that the fine had been paid and that his family, not the state, had decided to have the device surgically implanted. The IJ denied Cao's application because Cao's cross-examination and his submitted documentation "devastat[ed]" his

_____

[1] Cao's wife did not join him in the United States until December of 1998. (J.A. 233.)

credibility. (J.A. 291.)

Cao appealed to the BIA, again alleging fear of persecution due to China's family planning policy. On December 2, 1998, the BIA denied Cao's appeal. The BIA found merit to the IJ's adverse credibility finding and criticized Cao for failing to address the credibility issue on appeal.

Cao filed his first motion to reopen on December 29, 1998. Cao argued that the IJ erred by wholly disregarding his family planning testimony. On June 30, 1999, the BIA denied Cao's motion, concluding that Cao had not established prima facie eligibility of asylum based on the new definition of "refugee" announced in *In re X-G-W-*, 22 I. & N. Dec. 71 (BIA 1998). Again, the BIA emphasized the IJ's adverse credibility finding and Cao's failure to address the credibility issue either on appeal or in his motion to reopen.

Cao filed his first motion to reconsider on June 8, 2001 based on a change in the law effectuated by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). In an affidavit submitted with his motion, Cao stated he was eligible for asylum status because he and his wife would be forcibly sterilized upon their return to China. On August 10, 2001, the BIA denied Cao's motion because it was untimely.

Cao filed his second motion to reopen on October 30, 2001, claiming a "substantial change" due to China's coercive birth control policy. Cao alleged that after he and his wife sent their second child to live with Cao's brother in China, state officials ordered Cao to return to China to undergo forced sterilization. On April 5, 2002, the BIA denied Cao's motion because "[e]ven assuming for purposes of this motion that this

3

would be a changed circumstance . . . the respondent's evidence fails to establish that the change would lead to persecution." (J.A. 195.)

Cao filed his second motion to reconsider on May 3, 2002 based on his fear of future prosecution under China's coercive birth control policy. As a "new circumstance," petitioner alleged that the Family Planning Office had ordered him to return for forced sterilization. On June 6, 2002, the BIA denied Cao's motion because the regulations permitted only one motion to reconsider in any case previously the subject of a final decision by the BIA. *See* 8 C.F.R. § 1003.2(b)(2).

On May 19, 2005, nearly seven years after the BIA denied Cao's appeal and after two failed motions to reopen and two failed motions to reconsider, Cao filed this, his third motion to reopen his removal proceedings, alleging changed country conditions and new facts previously unavailable.[2] First, through phone conversations with his relatives in China, Cao had recently learned that the People's Family Planning Law ("PFPL") had been enacted in September of 2002. Second, Cao's relatives informed him that since late 2004, local cadres had announced the new law several times at meetings within his village and pregnant women had been forced to have abortions and sterilization procedures. Cao, who at this point had four children, claimed that he and his wife were in direct violation of the PFPL with the birth of their second child in 2000. Cao argued that

---

[2]To support his claim of changed country conditions in his third motion to reopen, Cao offered (1) his own affidavit; (2) an affidavit of John Aird dated September 20, 2004, prepared for the Executive Office for Immigration Review of the United States Department of Homeland Security; (3) testimony of John Aird before the Congressional Executive Commission on China dated September 23, 2002; and (4) 2003 and 2004 State Department Country Reports for China.

4

these new facts constituted a change in country conditions due to (1) an upgrade of punishment under the PFPL "from civil liability to legal punishment" and (2) the fact that the PFPL had recently transformed from "a sporadic policy of coercive birth control at the local level" into "a national, uniformly enforced law which citizens must obey." (J.A. 13.)

The BIA denied Cao's third motion to reopen on July 27, 2005. First, the BIA stated that "to the extent that [Cao] is arguing that the birth of his two youngest children in the United States would now be a basis for persecution, [Cao] made this same argument after the birth of his second child on June 26, 2000, and it was rejected by [the BIA]." (J.A. 2.) Second, the BIA reported that Cao's alleged violation of China's birth control policy had already been considered during his proceedings. Third, the BIA reviewed the legal liability provisions in the PFPL and noted that citizens who gave birth outside the one or two child limits were only required to pay a "social compensation fee." Notwithstanding the testimony of John Aird, the BIA concluded that Cao had not demonstrated that the implementation of the PFPL in his hometown constituted a change of circumstances.[3]

We review the BIA's decision to deny the third motion to reopen under the "highly deferential" abuse of discretion standard, *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir.

---

[3]The BIA had jurisdiction under 8 C.F.R. § 1003.2(c), which grants the BIA authority to reopen or consider any case in which it rendered a decision. We have jurisdiction under 8 U.S.C. § 1252(b)(1).

2004), and its findings of facts for substantial evidence, *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002). Generally, motions to reopen are granted only under "compelling circumstances," *Guo*, 386 F.3d at 562, and we do not disturb the BIA's determination unless it is "arbitrary, irrational, or contrary to law." *Sevoian*, 290 F.3d at 174.

In most cases, a petitioner may file only one motion to reopen removal proceedings, and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceedings sought to be reopened. 8 C.F.R. § 1003.2(c)(2); *Filja v. Gonzales*, 447 F.3d 241, 252 (3d Cir. 2006). However, this time and number requirement does not apply to aliens seeking to reapply for asylum or withholding of deportation based upon changed circumstances arising in the country to which deportation has been ordered, so long as evidence supporting the motion is material and was not available and could not have been discovered or presented at the previous hearing. 8 C.F.R. § 1003.2(c)(3)(ii); *Johnson v. Ashcroft*, 286 F.3d 696, 704 (3d Cir. 2002).

Cao claims that he satisfied the changed circumstances exception, 8 C.F.R. § 1003.2(c)(3)(ii), by citing the implementation of the PFPL in his village and the law's upgrade of punishment for couples who have had more than one child. However, we find that the BIA did not abuse its discretion in its analysis. Contrary to Cao's assertion that the possibility of punishment now includes imprisonment, forced abortions, and sterilization, the BIA cited to provisions of the PFPL that require couples with an

6

unapproved child to pay a social compensation fee. The State Department documents submitted by Cao corroborate the BIA's determination, and the 2004 report, in particular, suggests that the PFPL enjoys relaxed enforcement in rural areas. (J.A. 127.) While, the Aird affidavit does provide some contradictory evidence, elsewhere it states that since the late 1970's, "three cycles of relaxing and tightening have occurred . . . the basic policy has remained largely unchanged." (J.A. 63.) Further, the relevance of the Aird affidavit is questionable, as it was neither prepared specifically for Cao nor particularized to the circumstances of his village. *See Wang v. Bd. of Immigration Appeals*, 437 F.3d 270, 274 (2d Cir. 2006). Finally, while Cao does present some evidence that the PFPL is currently being enforced in his village, the BIA noted that Cao had repeatedly argued his alleged violations of the birth control policy both before the IJ and the BIA during his proceedings. Cao's reliance on the PFPL is merely updated information that reinforces his thirteen-year old claim of persecution and fear of forced sterilization by Chinese government officials. Thus, the BIA did not abuse its discretion by holding that Cao failed to establish a change in country conditions.

Cao also argues the merits of his application by alleging eligibility for asylum, withholding of removal, and relief under CAT. However, before the BIA can consider the merits of his motion to reopen, Cao must first demonstrate a change in country conditions. 8 C.F.R. § 1003.2(c)(3)(ii); *Wang*, 437 F.3d at 274. Since Cao did not satisfy this exception to the time and numerical limit for a motion to reopen, the BIA appropriately denied his third motion to reopen. Because the BIA's determination to

7

deny Cao's third motion to reopen is not arbitrary, irrational or contrary to law, *see*

*Sevoian*, 290 F.3d at 174, we will deny Cao's petition for review.